# In the United States Court of Federal Claims

No. 19-1135
Filed: August 14, 2026
Reissued: September 4, 2026†
**SEALED**

| |
|---|
| **CANDY LARUE,** |
| ***Petitioner,*** |
| **v.** |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** |
| ***Respondent.*** |

*John L. De Fazio*, Viola, Cummings, Lindsay, & Mosher, LLP, Niagara Falls, NY, for Petitioner.

*Sara Destefano*, Trial Attorney, *Jennifer L. Reynaud*, Assistant Director, *Heather L. Pearlman*, Deputy Director, *Jonathan D. Guynn*, Acting Director, Torts Branch, Civil Division, *Brett A. Schumate*, Assistant Attorney General, U.S. Department of Justice, Washington, DC, for Respondent.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

Petitioner, Candy LaRue, ("Ms. LaRue"), seeks reversal of the Special Master's decision denying her compensation claim pursuant to the National Childhood Vaccine Injury Act ("Vaccine Act"). Ms. LaRue alleged that a vaccination caused her to develop an autoimmune neurological disorder. The Special Master determined she had not proven causation by a preponderance of the evidence and denied entitlement. Ms. LaRue now moves for review.[1] (Pet'r's Mot. at 1, ECF No. 83). Ms. LaRue primarily argues that the Special Master failed to

† The Court originally issued this Opinion under seal on August 14, 2026. (ECF No. 86). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions no later than August 31, 2026. To date, the parties have not proposed redactions. Thus, the sealed and public versions of this Opinion are identical, except for the publication date and this footnote.

[1] Ms. LaRue filed a Motion for Review, (ECF No. 81), and a separate Memorandum of Objections, (ECF No. 83). Because the Memorandum of Objections contains the substance of her arguments, the Court refers to it as the pending motion.

evaluate relevant evidence, wrongly discounted testimony, and effectively held Ms. LaRue to an unduly high burden. However, the Court finds that the Special Master did not act arbitrarily or capriciously, abuse her discretion, or rule contrary to law. Accordingly, Ms. LaRue's Motion for Review is **DENIED**.

## I. Background

On August 22, 2016, a staff nurse at a family practitioner's office administered Ms. LaRue's influenza virus vaccination. (Petition ("Pet.") at 1, ECF No. 1). At the time, Ms. LaRue was in remission from Chronic Lymphocytic Leukemia ("CLL"), which she was diagnosed with in 2010.[2] (*Id.* at 2). Ms. LaRue claims that she began experiencing weakness in her legs and tingling in her arms within a few days of receiving the vaccine. (*Id.*). At an appointment with her treating specialist approximately two weeks after receiving the vaccine, Ms. LaRue complained of bone soreness and fatigue. (*Id.*). Her doctor advised a bone marrow biopsy to test whether her CLL had relapsed. (*Id.*). In December 2016, the biopsy results ruled out CLL. (*Id.*). When Ms. LaRue's symptoms did not alleviate, she saw another doctor in February 2017 who diagnosed her with low iron and administered unsuccessful iron therapy. (*Id.* at 3). A month later, Ms. LaRue went to a neurologic institute where she was diagnosed with Guillain-Barré syndrome ("GBS").[3] (*Id.*). Doctors updated her diagnosis to chronic inflammatory demyelinating polyneuropathy ("CIDP").[4] (Entitlement Decision at 7 (citing Pet'r's Ex. 1 at 183–84, ECF No.

---

[2] CLL is a slow-progressing cancer of the blood or bone marrow. *See* Monique Leahy, 7 *Attorneys Medical Advisor* § 58:17.

[3] GBS is "a rare disorder in which your body's immune system attacks your nerves. Weakness and tingling in your hands and feet are usually the first symptoms." *Gamboa-Avila v. Sec'y of Health & Hum. Servs.*, 170 Fed. Cl. 441, 443 (2024) (citation omitted), *aff'd,* 166 F.4th 1318 (Fed. Cir. 2026).

[4] Because Ms. Larue's GBS diagnosis was updated to CIDP on August 8, 2017, the Court consistently refers to her diagnosis as CIDP regardless of the time frame. (*See* Entitlement Decision at 25). CIDP "generally is defined as 'a slowly progressive, autoimmune type of demyelinating polyneuropathy characterized by progressive weakness and impaired sensory function in the limbs and enlargement of the peripheral nerves.'" *Beale v. Sec'y of Health & Hum. Servs.*, No. 23-1326V, 2026 WL 1244394, at *18 (Fed. Cl. Apr. 8, 2026) (citation omitted).

1-4)).[5] Since that diagnosis, Ms. LaRue experienced several hospitalizations and continued symptoms, including urosepsis and paralysis from the neck down.[6] (Pet. at 3).

In August 2019, Ms. LaRue sought compensation for injuries she alleges the influenza vaccine caused.[7] (Pet. at 5–6). Ms. LaRue claims her symptoms onset in September 2016, while the Secretary contends that symptoms did not present until November 2016. (Entitlement Decision at 16–17). After a status conference flagged contradictions between Ms. LaRue's self-reported onset of symptoms and apparent onset reflected in her medical records, Ms. LaRue filed affidavits from herself, friends, and coworkers to establish her onset timeline of approximately September 2016 to October 2016. (*Id.* at 1–2). At a second status conference, the Special Master explained that the record still provided "'no documentary support for the facts submitted by [Ms. LaRue] and her witnesses' regarding onset.'" (*Id.* at 2 (citing ECF No. 46 at 2)). Subsequently, Ms. LaRue moved for a ruling on the record. (*Id.*).

The Special Master ultimately found Ms. LaRue failed to provide preponderant evidence of causation, including an onset timeline. (Entitlement Decision at 1, 22). Under controlling case law, Ms. LaRue failed to meet the three requirements to demonstrate causation-in-fact. (*Id.* (referencing *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274 (Fed. Cir. 2005)). The Special Master found that Ms. LaRue failed to provide sufficient evidence that her CIDP developed within a plausible temporal relationship to the vaccine because medical records showing onset outside the medically acceptable timeframe outweighed lay testimony placing her onset within that timeframe. (*Id.* at 23–24). Stated differently, the Special Master found that this later onset did not comport with a medically acceptable timeframe for a causal link with her vaccine. (*Id.* at 24). Moreover, the Special Master found that Ms. LaRue's expert's proposed onset timeline lacked relevance to her case because it did not address CIDP specifically. (*Id.*). In addition, Ms. LaRue did not prove by a preponderance that the vaccination was the "but for" cause of her CIDP given her extensive pre-vaccination medical history and lack of medical literature or record support.[8] (*Id.*). The medical records noting a possible link between the

---

[5] *LaRue v. Sec'y of Health & Hum. Servs.*, No. 19-1135V, 2026 WL 1649726, at *1 (Fed. Cl. May 11, 2026) (docketed at ECF No. 80). For consistency with the parties' briefing, the Court refers to this decision as "Entitlement Decision" and cites to the page numbers of the docketed version.

[6] Urosepsis is a "[s]epsis from obstruction of infected urine." Urosepsis, *Stedmans Medical Dictionary* 961830, Westlaw (database updated Nov. 2014).

[7] Two Special Masters oversaw Ms. LaRue's claim. Special Master Roth initially presided, holding status conferences, granting subpoenas, and requesting additional supporting evidence until March 17, 2026. (*See* Entitlement Decision at 1–2). The case was then reassigned to Special Master Young who ruled on the record. (*Id.* at 2).

[8] Ms. LaRue's pre-vaccination medical history includes "stage III CLL, Barrett's esophagus, lymphocytosis, right lower quadrant pain, night sweats, syncope, anemia from chemotherapy,

vaccine and her symptoms relied solely on Ms. LaRue's self-reported GBS diagnosis and her own explanation of the vaccine's role. (*Id.* at 25).

## II. Analysis

Ms. LaRue moves for reversal of the Special Master's Entitlement Decision. (Pet'r's Mot. at 1). She asserts that the Special Master's decision was improper due to four reasons: (1) an improperly rigid legal standard in evaluating lay witness testimony; (2) failure to account for clinical reasons why medical records do not reflect a September 2016 onset; (3) overlooked medical records; and (4) improper burden on Ms. LaRue to effectively exclude an alternative cause. (*Id.*). The Secretary responds that the Special Master gave appropriate weight to the lay witness testimony, considered all medical records, and correctly applied the law when evaluating the causation evidence and logic. (Sec'y's Resp. at 7, 14, ECF No. 85). Ultimately, the Court finds that the Special Master considered all relevant evidence, drew plausible inferences, and articulated a rational basis for her conclusions. Therefore, she did not act arbitrarily or capriciously, abuse her discretion, or rule inconsistently with the law. Accordingly, the Entitlement Decision must be affirmed.

### *A. Standard of Review*

Under the Vaccine Act, the Court reviews a Special Master's decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 42 U.S.C. § 300aa-12; *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1375 (Fed. Cir. 2016). Legal conclusions are reviewed with no deference under the "not in accordance with law" standard while discretionary decisions are reviewed under an "abuse of discretion" standard. *Saunders ex rel. Saunders v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994); *Griglock v. Sec'y of Health & Hum. Servs.*, 687 F.3d 1371, 1374 (Fed. Cir. 2012). In contrast, factual findings receive a high level of deference under an "arbitrary and capricious" standard, meaning they must be upheld if they are based on evidence in the record that is "not wholly implausible." *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1363 (Fed. Cir. 2000); *see Lozano v. Sec'y of Health & Hum. Servs.*, 958 F.3d 1363, 1368 (Fed. Cir. 2020). The Federal Circuit has emphasized that reviewing the Special Master's factual findings is uniquely deferential, as the Court's role is not to "second guess" fact-intensive conclusions such as medical causation, probative value, or witness credibility. *See Milik*, 822 F.3d at 1376. Reversible error is "extremely difficult to demonstrate" so long as the Special Master has "considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision[.]" *Hines on Behalf of Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).

The Vaccine Act provides two ways for petitioners to establish causation: through a presumption of causation after demonstrating that the injury falls within the Vaccine Injury Table or proving causation in fact where the alleged injury is not listed in the Vaccine Injury Table

---

sore bones, muscle aches, measle weakness, iron deficiency, intermittent fevers, vitamin B12 deficiency, GERD, rosacea, neuritis, tingling and painful hands and feed, radiculitis, arthralgias, paresthesia, *H. Pylori* duodenitis, and hiatal hernia." (Entitlement Decision at 3).

("non-table"). 42 U.S.C. §§ 300aa-14(a), 300aa-13(a)(1), 300aa-11(c)(1)(C)(ii)(I). Because CIDP is a non-table injury linked to the flu vaccine, Ms. LaRue must prove causation in fact. § 300aa-14. Under *Althen*, petitioners prove "causation-in-fact" for non-table claims by a preponderance of the evidence by satisfying three prongs: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." 418 F.3d at 1278. Close calls in causation are resolved in the petitioner's favor. *Id.* at 1280.

Under the first prong, a petitioner must offer a medical or scientific theory that explains how the vaccine caused the alleged injury. *Althen*, 418 F.3d at 1278; *Pafford v. Sec'y of Health & Hum. Servs.*, 451 F.3d 1352, 1355–56 (Fed. Cir. 2006). A theory based on "sound and reliable medical or scientific explanation that pertains specifically to the petitioner's case" which is "legally probable" meets this burden. *Knudsen by Knudsen v. Sec'y of Health & Hum. Servs.*, 35 F.3d 543, 548–49 (Fed. Cir. 1994); *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010). For the second prong, the petitioner must demonstrate a logical sequence of cause and effect showing that the vaccination was the reason for the injury. *Althen*, 418 F.3d at 1278; *Broekelschen*, 618 F.3d at 1345. The petitioner must establish that the vaccine was not only a but-for cause but also a "substantial factor" in bringing about the injury. *Lozano*, 958 F.3d at 1368; *Shyface v. Sec'y of Health & Hum. Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999). Finally, the third prong, a proximate temporal relationship, requires showing a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1278; *Lozano*, 958 F.3d at 1368. Even if a petitioner satisfies the first prong, they cannot prevail if the onset of the injury does not fit within the timeframe discussed in the relevant medical literature, thereby failing to demonstrate the requisite proximate temporal relationship. *Milik*, 822 F.3d at 1379.

*B. Lay Witness Testimony*

To start, Ms. LaRue alleges that the Special Master improperly applied a legally rigid standard by categorically dismissing compelling, highly specific eyewitness accounts from her husband, three colleagues, and a friend regarding her September 2016 unusual gait. (Pet'r's Mot. at 2). Ms. LaRue further argues that the Special Master failed to assess whether her medical records were complete and contextually accurate before discounting the lay testimony in favor of the records. (*Id.*). Additionally, Ms. LaRue claims that the Special Master's criticism about the seven-year gap between the testified events and affidavits applies in nearly every vaccine injury case and cannot be a valid reason to discount the affidavits. (*Id.*).

The Secretary asserts that Ms. LaRue's argument is meritless, maintaining that the Special Master considered the lay witness testimony alongside the other evidence, noted conflicting evidence, and weighed accordingly. (Sec'y's Resp. at 8–9). Moreover, Ms. LaRue's lay witnesses' testimony occurred years after the events took place, making such evidence less persuasive than contemporaneous medical records. (*Id.* at 13). The Secretary contends that the Special Master acted within her discretion when favoring medical record evidence in the face of later, contradicting testimony. (*Id.* at 13 (citing *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1382 (Fed. Cir. 2021))).

The appropriate weight afforded to lay witness testimony is "strictly within the purview of the special master as the trier of fact." *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011) (citing *Broekelschen*, 618 F.3d at 1349). Although there is no presumption that all medical records are complete, contemporaneous medical records and treating physicians' opinions are favored over conflicting lay witness testimony. *Kirby*, 997 F.3d at 1383; *Cucuras*, 993 F.2d at 1528.

Here, the Special Master correctly weighed lay witness testimony. Ms. LaRue's affidavits, each filed from 2021 to 2024, detail events from early September 2016 to establish onset with numbness and gait difficulties. (Entitlement Decision at 10–13, 22 (citing Pet'r's Exs. 14–17, ECF No. 29; Pet'r's Exs. 42–44, ECF No. 48; Pet'r's Ex. 46, ECF No. 52)). Nonetheless, Ms. LaRue did not complain to a physician about these symptoms until February 2017. (*Id.* at 22). Her only recorded interim complaints involved bone soreness, fever, fatigue, night sweats, and weight loss, which all existed prior to her vaccination. (*Id.* at 22–23). The Special Master acknowledged the affidavits and Ms. LaRue's interim complaints but found such evidence unpersuasive in comparison to her medical records. (*Id.* at 22 ("[C]ontemporaneous medical records are more likely to contain an accurate chronology and timing than statements from individuals recalling events witnessed seven years prior.") (citing *Cucuras*, 993 F.2d at 1528; *Reusser v. Sec'y of Health & Hum. Servs*., 28 Fed. Cl. 516, 523 (1993))).

Ms. LaRue's contention that time gaps occur in nearly all vaccine cases is compelling; however, this argument ultimately does not apply since the Special Master did not disfavor the affidavits on their temporal delay alone. (Entitlement Decision at 22). Rather, the Special Master noted their contradictions with medical documentation and favored contemporaneous medical records. (*Id.* at 22–23). The affidavits' specificity does not automatically outweigh their remoteness in time due to the broad discretion afforded to Special Masters in assessing witness credibility. *See R.J. ex rel. W.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1235 (Fed. Cir.), *cert. denied sub nom. W. J. by R.J. v. Becerra*, 145 S. Ct. 440, 220 L. Ed. 2d 188 (2024). Although Ms. LaRue described debilitating physical symptoms, there are no reports or observations from medical professionals from 2016. (*Id.*). Later testimony from Ms. LaRue's oncologist, Dr. Ahmed, describing her September 2016 symptoms as "new" was reasonably found unpersuasive because he admitted his lack of recollection and absence of notation. (*Id.* at 23). In contrast, from the beginning of 2017 to mid-2018, Ms. LaRue reported her new symptoms as beginning in November 2016. (*Id.*). Nonetheless, the Special Master's decision on the accuracy and context of Ms. LaRue's medical records remain "virtually unreviewable" due to the Special Master's wide fact-finding discretion and the medical records' trustworthiness. *Cedillo v. Sec'y of Health & Hum. Servs.*, 617 F.3d 1328, 1347 (Fed. Cir. 2010) (quoting *Hanlon v. Sec'y of Health & Human Servs.,* 191 F.3d 1344, 1349 (Fed. Cir. 1999)); *see also Cucuras*, 993 F.2d at 1528 ("Medical records, in general, warrant consideration as trustworthy evidence."). Thus, given the testimony delay, contradicting contemporaneous medical records, and overall record, the Special Master did not abuse her discretion in finding Ms. LaRue's lay testimony unpersuasive.

*C. Oncological Filters*

Next, Ms. LaRue contends that the Special Master ignored how Ms. LaRue and her doctors ignored early neurological charting in favor of ruling out a fatal cancer relapse. (Pet'r's Mot. at 3). Ms. LaRue points out her experiences as a cancer patient as coloring both her and her doctor's reactions and causing them to focus on oncological symptoms rather than neurological ones. (*Id.*). In support, Ms. LaRue cites *Shapiro v. Secretary of the Department of Health and Human Services*, where the Court explained how "the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." (*Id.* (citing 101 Fed. Cl. 532, 538 (2011))).

In contrast, the Secretary argues that there is no "absence of a reference to a condition" because Ms. LaRue's oncologist recorded her September 2016 neurological exam as normal. (Sec'y's Resp. at 14). The Secretary emphasizes how an absence of a symptom reference does not affirmatively disprove a symptom but can be a factor within the Special Master's findings. (*Id.*). The Secretary also disputes Ms. LaRue's claim that the Special Master ignored her history of cancer, citing the Special Master's express consideration of Ms. LaRue's consistent history of reporting new and continuing symptoms. (*Id.* at 15 (citing Entitlement Decision at 27–28)).

In evaluating the record, the Special Master may account for a petitioner's medical history when determining plausibility. *Doe v. Sec'y of Health & Hum. Servs.*, 601 F.3d 1349, 1358 (Fed. Cir. 2010) (noting that nothing in § 300aa-12 limits what evidence the Special Master may consider in determining whether a petitioner has met their prima facie burden). Although medical records are not presumed to be complete and accurate, they are generally considered highly reliable evidence. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1383 (Fed. Cir. 2009) (citing *Cucuras*, 993 F.2d at 1528). Even vague medical records are not categorically considered inaccurate or self-contradictory. *Flowers v. Sec'y of Health & Hum. Servs.*, 173 Fed. Cl. 613, 627 (2024). The "absence of a reference to a condition" may be explained by physicians entering information incorrectly, physicians recording "only a fraction of all that occurs[,]" patients visiting a medical professional for reasons entirely unrelated to the vaccine symptoms, or patients already exhausting all medical treatment. *Kirby*, 997 F.3d at 1383. However, the lack of medical notation is distinguishable from contradicting statements. *Id.*

Here, the Special Master accounted for the oncological lens when assessing the entire record. Ms. LaRue's history of cancer explicitly factored into the Special Master's analysis since the Special Master mentioned that given Ms. LaRue's "history of cancer, it seems unlikely that she would not have reported new symptoms immediately to her treating physicians" considering all the other symptoms she reported earlier that year. (Entitlement Decision at 23). Unlike the Special Master in *Shapiro*, the Special Master did not treat Ms. LaRue's lack of neurological charting as determinative but instead weighed Ms. LaRue's accompanying evidence, including her inconsistent self-reported onset, normal neurological results, unpersuasive expert testimony, and multiple doctor appointments in late 2016 where she could have reported new, debilitating symptoms. (*Id.* at 23–24); 101 Fed. Cl. at 540 (distinguishing a reversible entitlement decision where the Special Master completely ignored relevant evidence from a lawful entitlement decision where the Special Master weighs evidence against each other). Thus, this is not a

situation of silence, but one of inconsistent statements.[9] Indeed, Ms. LaRue's oncology-first framework was not ignored; the Special Master's decision considered an oncology lens but concluded that it cut against Ms. LaRue's claims rather than supported her onset. In properly weighing this clinical framework, the Special Master provided a well-reasoned basis that requires the Court to uphold her ruling.

*D. Overlooked Medical Records*

Additionally, Ms. LaRue argues that the Cleveland Clinic time-course records and St. Mary's Hospital physical therapy records were misread or received insufficient weight. (Pet'r's Mot. at 3–4). According to Ms. LaRue, the Cleveland Clinic records from August 2017 document self-reported symptoms as starting in "fall 2016." (*Id.* at 3; Entitlement Decision at 5). Ms. LaRue claims that this should be interpreted as early September because Ms. LaRue is a schoolteacher. (Pet'r's Mot. at 3). She contends that the Special Master ignored the ambiguity of this evidence and the *Althen* instructions to construe close calls in favor of petitioners. (*Id.*). In addition, Ms. LaRue claims that the Special Master failed to sufficiently address key St. Mary's Hospital documents which corroborated witness testimony and were specifically requested by the prior Special Master. (*Id.* at 4 (citing *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016))).

In opposition, the Secretary maintains that the Special Master referenced the Cleveland Clinic records in her decision and notes Ms. LaRue's acknowledgment of such. (Sec'y's Resp. at 15 (citing Pet'r's Mot. at 4)). For the St. Mary's Hospital records, the Secretary points to the Special Master's decision mentioning a physical therapy visit as proof the Special Master considered those records. (*Id.* at 16). The Secretary continues that the Special Master's decision cannot be characterized as a close call under *Althen*, and thus construed in Ms. LaRue's favor, since Ms. LaRue did not meet a preponderance of the evidence for multiple prongs. (*Id.*). For both medical documents, the Secretary highlights how two documents potentially implying a September 2016 onset do not outweigh the rest of the record or create a close call. (*See id.* at 14).

Special Masters must address "relevant evidence of record" and "articulate a rational basis" for their plausible inferences. *Hines,* 940 F.2d at 1528; *Milik*, 822 F.3d at 1376. The Special Master's decision must explain enough to rise above conclusory assertions, "mere recitation," or "naked conclusion." *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368, 1372 (Fed. Cir. 2025) (citation omitted). Rather, the Special Master must detail the core reasoning why record evidence is sufficient or insufficient. *Id.* If a Special Master's misinterpretation of a document leads to misconstruing medical records, misapprehending the

---

[9] Even if this was a true absence of a reference, Ms. LaRue had multiple appointments between the August 2016 vaccine and February 2017 CIDP symptom notation. (*See* Entitlement Decision at 15). These visits, although focused on her bone marrow test, would have likely noted new physical symptoms considering the association between CIDP and CLL and how her physical symptoms of fatigue and bone soreness were recorded. (*See id.* at 16 ("[S]everal of [Ms. LaRue's] treating physicians opined that her CIDP was linked to her CLL[.]")).

medical theory, or drawing factual inferences that are completely unsupported by the record, the Court sets aside the decision. *Paluck v. Sec'y of Health & Hum. Servs.*, 786 F.3d 1373, 1382 (Fed. Cir. 2015); *J. v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 20, 47 (2021).

To the extent Ms. LaRue argues this claim is a question of law, her argument is unconvincing. Although Ms. LaRue frames her objection as a legal challenge, it ultimately concerns the Special Master's weighing of evidence, specifically in determining the significance of the Cleveland Clinic and St. Mary's Hospital records. *See Lombardi v. Sec'y of Health & Hum. Servs.*, 656 F.3d 1343, 1356 (Fed. Cir. 2011) (describing a Special Master's decisions as true credibility determinations rather than cloaked legal standards because of the well-reasoned conclusions and significant effort spent on the evidence). This is more accurately characterized as a question of fact.[10] *See Porter*, 663 F.3d at 1254 (describing credibility and evidence weight determinations as questions of fact).

The Special Master did not act arbitrarily or capriciously because she included sufficient explanation and evidentiary support. (*See* Entitlement Decision at 22–25). Both the Cleveland Clinic and St. Mary's Hospital records relied upon Ms. LaRue's self-reported September 2016 onset. (*Id.* at 5, 8). Even if the Special Master misinterpreted what month "fall" pertains to, all references to symptom onset were supplied to the medical provider by Ms. LaRue herself. (*Id.*). The Special Master explained her inference disfavoring medical records utilizing Ms. LaRue's self-reported onset because Ms. LaRue reported GBS rather than CIDP for over a year and most of Ms. LaRue's medical documents contradicted a September 2016 onset. (*Id.* at 25). This logical reconciliation of conflicting evidence confirms that the Special Master weighed the record properly and did not abuse her discretion.

*E. Excluding Alternative Cause*

Finally, Ms. LaRue contends that *Althen*'s second prong does not require her to eliminate CLL as a possible cause of her injury. (Pet'r's Mot. at 4–5 (referencing *Althen*, 418 F.3d at 1278 (requiring "a logical sequence of cause and effect showing that the vaccination was the reason for the injury")). Rather, she argues that she need only establish that the vaccine was a substantial contributing factor. (*Id.*). She alleges that *Althen* does not require the vaccine to be the sole cause since the Vaccine Act accommodates multi-factorial causation; rather, it is the government's burden to prove an alternate cause was the sole substantial factor after Ms. LaRue establishes a prima facie claim. (*Id.* (citing *Shyface*, 165 F.3d at 1352; *de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1354 (Fed. Cir. 2008))).

[10] For mixed questions of fact and law, the Court must determine whether it primarily involves legal or factual work. *Nieves v. Sec'y of Health & Hum. Servs.*, 167 Fed. Cl. 422, 428 (2023) (citing *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387 (2018)). Weight determinations more heavily involve factual work. *See Porter*, 663 F.3d at 1254.

The Secretary responds that Ms. LaRue misstates the *Althen* prong two requirement. (Sec'y's Resp. at 13). The Secretary contends that specific causation requires "more than simply showing that the vaccination was a substantial factor," but that the vaccination was the but-for cause of the injury. (*Id.* at 13–14 (citing *Pafford*, 451 F.3d at 1355)). The Secretary further describes how the Special Master may instead consider evidence of other possible causes (*Id.* at 13 (citing *Winkler v. Sec'y of Health & Hum. Servs.*, 88 F.4th 958, 962–63 (Fed. Cir. 2023); *Stone ex rel. Stone v. Sec'y of Health & Hum. Servs.*, 676 F.3d 1373, 1380 (Fed. Cir. 2012))).

For a petitioner's initial burden, "the presence of multiple potential causative agents makes it difficult to attribute 'but-for' causation to the vaccination." *Pafford*, 451 F.3d at 1358. The Federal Circuit has established that while the Special Master may rely on evidence of other pre-existing conditions to determine whether an injury was caused by factors unrelated to the vaccine, this inquiry occurs after the petitioner meets their initial burden demonstrating a de facto injury. *Knudsen*, 35 F.3d at 547. However, the Special Master can consider evidence of alternative causes when it is just one factor the Special Master relies upon rather than the sole evidence. *Doe*, 601 F.3d at 1358 (allowing the Special Master to consider evidence of SIDS did not improperly shift the burden to petitioner to rule out alternative causes).

Unlike Ms. LaRue's other claims, her objection related to the application of *Althen*'s prong poses a question of law owing no deference to the Special Master. *Kirby*, 997 F.3d at 1380; *Munn v. Sec'y of Health & Hum. Servs*., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). Nonetheless, Ms. LaRue's claim still fails to justify reversal since the Special Master acted in accordance with law. As the Secretary explained, the Special Master may consider alternative causes as part of the entire record when determining causation. *Stone*, 676 F.3d at 1380; *Winkler*, 88 F.4th at 967–68 (Fed. Cir. 2023). "[I]n some cases a sensible assessment of causation cannot be made while ignoring the elephant in the room—the presence of compelling evidence of a different cause for the injury in question[,]" even where that evidence would be relevant to another inquiry. *Stone*, 676 F.3d at 1380; *see also Pafford*, 451 F.3d at 1357–59 (holding that the Special Master did not err in considering alternative causes since petitioner "never established that the vaccinations were a but-for cause").

The record is clear that Ms. LaRue was not unilaterally burdened with "ruling out" her CLL; instead, the Secretary and medical records "ruled in" how CLL may be the but-for cause. *See Winkler*, 88 F.4th at 963. As in *Doe*, considering the entire record, CLL was only one factor amongst many within the Special Master's analysis for prong two. (*See e.g.*, Entitlement Decision at 24–25 (considering medical records, multiple treating physicians' opinions, a filed letter, expert testimony, and medical literature)); *Doe*, 601 F.3d at 1358. For example, the Special Master otherwise found Ms. LaRue's expert, Dr. Steinman, unpersuasive and his testimony flawed. (*Id.* at 25). Dr. Steinman's causal theory misconstrued Ms. LaRue's physicians' records, could not account for unsupportive scientific literature, and was less persuasive than the Secretary's expert witness. (*Id.* at 17, 25). Because Ms. LaRue failed to establish a prima facie case of vaccine causation, the burden never shifted to her to rule out CLL as an alternative cause of her injury. *See Pafford*, 451 F.3d at 1357–59 (holding that the Special Master did not err in considering alternative causes since petitioner "never established that the vaccinations were a

but-for cause"). The Special Master acted lawfully in reviewing Ms. LaRue's CLL records during *Althen* prong two; CLL was so closely intertwined, and ignoring those records would lead to an incomplete analysis. *See id.* at 963 ("Such contemplation of a potential causative agent when evaluating whether or not a petitioner has established a prima facie case is in accordance with the law."); *Stone*, 676 F.3d at 1380 (describing a Special Master's authority to review the whole record as including evidence of alternative causation regardless of relevance to later inquiries); (Entitlement Decision at 25 (noting multiple physicians attributed Ms. LaRue's CIDP to her CLL)). As such, multi-factor causation does not apply since Ms. LaRue did not meet her initial burden of both a substantial cause and but-for causation.[11] Because Ms. LaRue failed to establish this essential threshold requirement, the Special Master correctly determined that any inquiry into multi-factor causation was legally precluded.

## III. Conclusion

The Court finds no grounds to disturb the Special Master's decision. The record demonstrates that the Special Master did not act arbitrarily, capriciously, or abuse her discretion, nor did she rule inconsistently with the law. Because she comprehensively evaluated all relevant evidence, drew plausible inferences, and articulated a rational basis for her conclusions, the Court **AFFIRMS** her decision, (ECF No. 80), and **DENIES** Ms. LaRue's Motion for Review, (ECF Nos. 81, 83). The Clerk is directed to enter judgment accordingly.

The Court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which the parties agree. Per Vaccine Rule 18(b), **fourteen (14) days** from the date of this decision, the parties shall file a Joint Status Report indicating their agreement with the proposed redactions, attaching a copy of those pages of the Court's ruling containing proposed redactions, with all proposed redactions clearly indicated.

**IT IS SO ORDERED.**

s/ David A. Tapp
DAVID A. TAPP, Judge

[11] Even if the Special Master erred, it is notable that Ms. LaRue did not meet *Althen* prong three. (Entitlement Decision at 24). Because all *Althen* prongs must be satisfied, the Special Master's decision would still be affirmed regardless of whether *Althen* prong two was misapplied. *See Caves v. Sec'y of Health & Hum. Servs.*, 100 Fed. Cl. 119, 145 (2011) (concluding that an error on one prong was a harmless error that does not impact the ultimate outcome because another required prong remained unsatisfied); *see also W.C. v. Sec'y of Health & Hum. Servs.*, 704 F.3d 1352, 1358 (Fed. Cir. 2013) (describing a Special Master's consideration of unlawful factors as harmless error since the petitioner could not establish causation-in-fact regardless).